[Sac. No. 4931. In Bank.—February 21, 1936.]

WAITY KNAPP, Respondent, v. ETHEL R. BERGMAN, Appellant.

Henry & Bedeau for Appellant.

John M. Welsh and Butler, Van Dyke & Harris for Respondent.

SEAWELL, J.—This appeal is from a judgment in an action quieting plaintiff's title to five acres of land situate in the "Carmichael Colony", county of Sacramento. Both parties claim title from a common source. The disputed question is whether a deed prior in time and executed by the common grantor, John C. Scroggs, to the plaintiff was actually delivered. If so, a subsequent deed describing the same lands executed by him to defendant must fail.

John C. Scroggs was a man well advanced in life and for several years preceding his death, which occurred August 9, 1933, was in ill health and required the services of a nurse. In addition to the common ills which usually accompany advanced years, such as arterial hardening and diabetes, he sustained a broken leg from which he never fully recovered, and he was compelled to resort to the aid of crutches to assist his impaired powers of locomotion.

His wife predeceased him by seven or eight years. He left no issue. Among his collateral kindred is the defendant, a niece. The plaintiff was a stranger to his blood, and was not related to him by consanguinity. She is a practical nurse and had nursed his wife during her last sickness and had served him continuously from September, 1931, to March, 1932. At times she resided in one of his houses while nursing him. She and her sisters and other members of her family had known him and his wife quite intimately for approximately thirty-three years. He had sent for her upon several occasions to nurse either his wife or himself. She drove him about in his automobile on missions of business or mere pleasure rides.

Mr. Scroggs was a nurseryman by occupation and apparently had acquired real estate of some considerable value.

It may be stated here by way of explanation of testimony which will be considered later, that he was not unkind, but was much given to the use of profane language. In fact, it is in evidence that oaths or profane words constituted the larger part of his vocabulary.

It does not appear in the record that his niece was in any way attentive to his wants or interested herself in his welfare, or that any of his other collateral kindred, if he had

others, ever ministered. to his comfort. The plaintiff nursed him through other sicknesses, for which she received full compensation.

█ The case is one of the many which present exceedingly vexatious questions which trial courts are called upon to decide upon conflicting evidence, or upon inferences which may seem to support either of two divergent conclusions. In such cases the conclusion of the trial court cannot be disturbed.

The question before us is one of fact as to whether the learned trial court, upon a consideration of the relations of the parties to Scroggs and his acts in relation to both or either of them, correctly interpreted his intentions as to the final disposition of the five-acre tract of land in suit. Its value was not proved, but from the meager references made to it by counsel the presumption is that it was not exceptionally valuable.

According to the testimony of plaintiff, the decedent Scroggs had on several occasions prior to January 5, 1932, told her that it was his intention to so arrange by deed that she would come into the ownership and possession of said land when his tenure ended; that he did not wish to part with the possession during his lifetime for several reasons, one of which was that an old-time friend whom he referred to as John had made his home on the ranch for many years, and he wanted to be assured that the friend would not be sent away during his lifetime. Another reason was that his visits to the ranch afforded him the greatest of the few pleasures remaining to him in his declining years. Plaintiff's testimony is to the effect that he said to her that, but for the above considerations and for fear of the discord it would probably engender in the minds of some of his collateral kin, he would deliver her an absolute deed in fee instead of the deed which is the center of this controversy, and which we will now discuss. Said deed was executed on January 5, 1932, by John C. Scroggs to plaintiff, Waity Knapp. The consideration recited therein was love and affection and in consideration of past services rendered by her to the grantor. No suggestion was made as to the competency of the grantor by the defendant. Of course, the defendant would have been hoisted by her own petard had incompetency been shown, inasmuch as her deed was executed several months after plaintiff's deed

was made. The deed in question was drawn by Jay L. Henry, Esq., attorney for Mr. Scroggs, and Grove Bedeau, Esq. took Mr. Scroggs' acknowledgment. Mr. Henry's testimony bearing upon the execution of the deed was that a day or two before it was executed Mr. Scroggs sent for him and he visited him in his room in the building which he owned and occupied. He told him that plaintiff was constantly haggling him for a deed to the said property. He said the effect of Mr. Scroggs' language was that he proposed to have him, Henry, draw a deed conveying said property to plaintiff and that he wanted to retain absolute control over it and the right to recall it at any time, whether it was placed in his, Henry's, hands or with the Capitol National Bank. He asked Mr. Henry's advice in the matter. Mr. Henry advised him that to constitute an absolute conveyance the deed must be so drawn and delivered, but that he could execute the deed and place it with some third party or a bank and reserve unto himself the right to recall it at any time. The latter plan seemed to fit his case, and Mr. Henry said Scroggs instructed him to draw the deed. The plaintiff was not present at this meeting. The next day he returned with the deed and Scroggs signed it and Mr. Bedeau took his acknowledgment. The deed was absolute in form. Mr. Henry asked Mr. Scroggs what he wanted him to do with the deed—if he wanted him to hold it subject to his right to withdraw it, and if he died without withdrawing it was he to deliver it to Waity Knapp and Mr. Scroggs said "Yes"; that he returned to his office with the deed, placed it in an envelope and wrote upon the envelope, "Contains a deed from J. C. Scroggs to Waity Knapp," and that he was told to hold it and deliver it to Waity Knapp upon his (Scroggs') death if he did not recall it. Two weeks later, January 19, Mrs. Knapp called at his office and told him Mr. Scroggs desired him to deliver the deed to him; he took the deed to Mr. Scroggs' room in the envelope upon which he had written the instructions as above set forth and informed Mr. Scroggs that he had brought the deed in response to his request and asked him what he wanted to do with the deed; Mr. Scroggs replied "Yes, that is correct; I want you to return the deed to me"; he further said that Waity Knapp was "dissatisfied or a little uneasy about me holding the deed and it had been suggested to him that the deed was to be placed in the Capitol National Bank".

Mr. Henry delivered the deed to Mr. Scroggs and left. Mr. Henry did not again see the deed until September 24, 1932, some eight months thereafter, when he received word that Mr. Scroggs wished to see him. He visited him at his room and Scroggs requested him to go to the Capitol National Bank and get the "deed that had been placed down there sometime previously". He went to the bank and saw Mr. George W. Spillman, trust officer of the Capitol National Bank, and communicated to him Mr. Scroggs' request. Mr. Spillman took the deed from the vault and both he and Spillman proceeded to Mr. Scroggs' room and the deed was delivered to Scroggs, who receipted for it and destroyed it. The envelope upon which Henry had written certain data contained the following letter of instructions which were in the envelope when originally delivered to the bank:

"This deed from J. C. Scroggs to Waity Knapp is not to be delivered until after the death of said J. C. Scroggs."

The body of the instructions was apparently written in the hand of Waity Knapp, although she first denied the writing but finally admitted that the writing resembled her penmanship, and she finally said that she might have written it but she had no recollection of having done so. There was no question as to the signature of Mr. Scroggs being genuine. Mr. Spillman's attention was called to the deed and the instructions signed by Mr. Scroggs soon after said papers had been delivered to the bank by Mr. Johns, assistant cashier. The written instructions and the deed were in the envelope as prepared by Mr. Henry. They were placed by Mr. Spillman with Mr. Scroggs' will and some papers belonging to him. He was a customer of the bank and was apparently well known to its officers and employees. Two days after receiving the deed and written instructions signed by Mr. Scroggs, Mr. Spillman, without request made by any disclosed person, proceeded to Mr. Scroggs' room and asked him if it was his intention to make "absolute delivery of the deed so that he could not withdraw it or have *control* of the property, and he said no, just place it with his will". Mr. Spillman told him if the bank accepted it and wrote it up in escrow he would never be able to withdraw it except upon the joint signature of the grantor and grantee. Mr. Scroggs instructed him to "just leave it with his will and that he may want to withdraw it at some future date. So I told him that

was perfectly all right if he just left it there for safe keeping.'' The deed and instructions were placed in the vault with Scroggs' other papers. On September 24, 1932, Mr. Spillman accompanied Mr. Henry to Scroggs' room, carrying with him the deed, which was destroyed, as already related. Notwithstanding the full and specific directions accompanying the deed, Mr. Spillman personally visited the grantor for instructions as to how he should regard the transaction. He said it was usual, when the bank accepted a deed to be delivered to the grantee upon the death of the grantor, to write out its own instructions. There was nothing ambiguous about the directions. They are brief but specific. After listening to Mr. Spillman's explanations as to the effect of a legal delivery, the grantor, Mr. Scroggs, told him to leave the deed with the will, as he might wish to withdraw it. Mr. Spillman, acting upon the oral statements of the grantor, concluded that there had been no delivery with intent to pass title and he wrote out no instructions whatsoever. The statement made to Mr. Scroggs to the effect that Mr. Scroggs would lose *all control* of the real property if he parted with control of the deed was inaccurate. According to the testimony of the plaintiff, control of the real property was the thing he did not purpose to part with. The immediate vesting of title in plaintiff was not a matter of great concern to him, except to the extent that it might deprive him of the right of possession and control during his lifetime. This he did not purpose to lose. It may not be beyond probability that the fear of losing absolute control of the property, as the matter was erroneously put to him by Mr. Spillman, influenced him to repudiate the written instructions enclosed in the envelope with the deed.

We now turn to the testimony of Waity Knapp, the plaintiff. She testified that she and members of her family had known Mr. Scroggs and his wife for more than thirty years, and the families had always remained very friendly during that time; she had nursed both; during the last seven or eight years she had intermittently nursed him and had lived on his property; that Mr. Henry and Bedeau called at the Scroggs home with the deed and it was read aloud, and Mr. Scroggs read it for himself; Mr. Henry asked him what he wanted him to do with it, and Mr. Scroggs said he might as well put it with the rest of his papers, and Mr. Henry said all right

and took possession of the deed and left. Two days afterward Mr. Scroggs sent word to Mr. Henry to return the deed and he did so; as plaintiff entered the room some time thereafter, Mr. Scroggs handed her the deed and said, "Waity, here is your God damn deed, what are you going to do with it?" While his language was profane, as it was his habit to speak, he did not speak in anger and his manner was exceedingly friendly; she took the deed and kept it in her possession until the following day, January 21st, whereupon, at the suggestion of Mr. Scroggs, it was delivered to the Capitol National Bank. She had told him that she was going to rent a safe deposit box, but he said that it was unnecessary to do so, as she could leave it with the trust department. As they stopped in front of the bank he instructed her to go in the bank and tell Mr. Holmes or Mr. Zoller, officers or employees, to come to the automobile, as he wished to speak to one of them. She did so, and a gentleman came to the car door whose name she did not know. Mr. Scroggs greeted him by his given name and he called Mr. Scroggs "Jack", a name by which he was commonly known. He said that both Mr. Holmes and Mr. Zoller were very busy. Mr. Scroggs said to him, "This is Mrs. Knapp, and I have just given her a deed to my ranch and she wants to place it in your bank for safe keeping." The gentleman said, "All right, Jack, we will take care of it." She handed him the envelope containing the deed and he left. She asked Mr. Scroggs if she should take a receipt for it and he said it was not necessary, as the bank officer would put it away and no one could touch it. She never saw the deed again. She felt secure in its delivery, as Mr. Scroggs had been a customer of the bank for many years and had done a large volume of business with it. Plaintiff had written many checks for him and had transacted much of his business during the last several years of his life. She had visited the property in suit with him many times, and he always said it was hers. Mr. Scroggs frequently told her the unkind things Mrs. Bergman and her mother were saying to him about plaintiff, and she did not record the deed because of the trouble that it would have created, and for the further reason that he did not want Mrs. Bergman and her mother to know that he had made the deed.

On the day following Mr. Scroggs' death plaintiff went to the bank and asked for the deed and was informed that it was

withdrawn September 24, 1932. She saw at about the same time in the printed list of real estate recordations that the defendant had recorded a deed from John C. Scroggs to Ethel Bergman describing the same real property described in her deed. Henry Dixon McGuire, an employee of the Capitol National Bank, testified he recollected that some two years prior to his appearance as a witness he had given some of Scroggs' papers enclosed in an envelope, to Mr. Johns. He was unable to describe them further, and was not positive as to seeing any' writing on the envelope. Mrs. Bergman was called as a witness by the plaintiff under the provisions of section 2055 of the Code of Civil Procedure, and admitted that she knew of the destruction of the Waity Knapp deed at the time she received her deed from Scroggs, dated November 25, 1932, and which was recorded August 10, 1933. Defendant went into possession under said deed upon the death of Scroggs.

The history of the Knapp deed may be thus summarized: It was executed January 5, 1932, and taken in charge by Mr. Henry; two weeks later, January 19th, it was redelivered to Mr. Scroggs at his request by Mr. Henry, and on the same day delivered by Scroggs to Mrs. Knapp; on January 21st it was delivered by Mrs. Knapp, in company with Mr. Scroggs, to the Capitol National Bank; on September 24, 1932, said deed was delivered to Mr. Scroggs at his home by the voluntary act of W. G. Spillman, trust officer, accompanied by Mr. Henry, and destroyed by Mr. Scroggs by tearing in the presence of Mr. Spillman and Mr. Henry.

 Upon the foregoing facts the court found that the deed was executed January 5, 1932, as herein related, and that said Scroggs, on January 21, 1932, delivered the same to said bank, as depositary, together with said written instructions, to be by said bank delivered to Mrs. Knapp upon his death, with the intention thereby of vesting absolute title in said Mrs. Knapp and divesting himself of all of his right, title and interest in said real property, saving only to himself a life interest therein, and that title did vest in said Mrs. Knapp upon the delivery of the deed to said bank on January 21, 1932, and that plaintiff, as owner, has been entitled to possession ever since the death of Mr. Scroggs, to wit, August 9, 1933. It was further found that defendant was aware of and had full knowledge of the execution and deliv-

ery of the deed under which title was conveyed to plaintiff, and that while in possession of said knowledge she wrongfully and without right accepted said deed executed by Scroggs to her and caused the same to be recorded after the death of said Scroggs, August 10, 1933. Full findings are made to the effect that Scroggs' right to pass title after the bank transaction of January 21, 1932, failed and his subsequent attempts to deal with the title were futile.

It is clear that the formality of a delivery such as would vest title in Mrs. Knapp was not complied with at the time the deed was executed, January 5th. Mr. Henry testified that he advised Mr. Scroggs there were two ways of accomplishing his desire that Mrs. Knapp should enjoy ownership upon his death. The first was to place the deed, which was absolute in form, in her possession; second, he could deliver the deed to him or the bank, to be held at his will, and if not recalled before his death to be delivered to her upon the happening of that event. The latter method constituted but a conditional delivery and no title would pass to the grantee under such an understanding. Mr. Henry said that this arrangement seemed to be what the grantor wished and he complied with his requests. When the deed was recalled by Mr. Scroggs, however, he had complete control over it and he could have made an absolute delivery to Mrs. Knapp, which, according to her testimony, he actually made. If her testimony was given credit by the trial court, it would have been justified in so finding and a judgment, on conflicting evidence, could have been properly entered in her favor and all that occurred thereafter would not have changed the result. The court did not decide the case on that ground, but preferred to decide it on the ground that the delivery made on January 21st to the bank, enclosing the letter of instructions as to its delivery to Mrs. Knapp, signed by him, completed a legal delivery and placed the deed beyond his control thereafter. It is the contention of appellant that the bank was but the grantor's agent and its possession was the grantor's possession. We cannot agree with this contention. The evidence certainly justifies the conclusion that it was his desire that Mrs. Knapp should come into the enjoyment of the real property in issue at his death. Mr. Henry, a very reputable attorney, was the personal attorney of Mr. Scroggs, whom he had entrusted to hold the deed himself or deposit it at the

bank. Scroggs evidently became dissatisfied with the transaction as it stood and recalled the deed and made delivery first to Mrs. Knapp, who under his direction deposited it with the bank, and not with any officer or employee of the bank. The instructions written on the envelope by Mr. Henry to the effect that the deed might be recalled at the will of the grantor were but the memoranda of the attorney written at his office, and when the deed was delivered to the grantor they dropped out of the transaction. The delivery of the deed to Mr. Henry was an idle act so far as conveying anything to Mrs. Knapp was concerned, and that transaction, so far as delivery was involved, ended with the delivery being made to the grantor. From that point forward the evidence fully supports the finding that the deed was deposited by Mr. Scroggs with the intention of conveying title to the plaintiff. He told the plaintiff where and how to deposit the deed, accompanied her to the bank and told the gentleman who came to the automobile at his request to place the deed in a secure place. But beyond all this, the deed was received by the bank containing instructions from the grantor that could not have been misunderstood. Mrs. Knapp was but obeying the instructions of Mr. Scroggs when she handed the deed to the bank clerk, if indeed Scroggs had not parted with all control of it when he delivered it to her on January 19th.

There is ample evidence in the record to support the findings.

The judgment is affirmed.

Thompson, J., Curtis, J., Langdon, J., and Waste, C. J., concurred.